OPINION
{¶ 1} This timely matter comes for consideration upon the record in the trial court, the parties' briefs, and oral argument before this Court. Appellant Barbara Masny appeals the decision of the Mahoning County Court of Common Pleas summarily dismissing her claim of negligent infliction of emotional distress in favor of Appellee Dr. Ronald Rhodes.
 {¶ 2} Masny claims Rhodes' negligent destruction of her biopsy sample resulted in her loss of opportunity to determine the nature, character, and extent of her disease, if any. We must decide whether Masny's claim is based upon either a non-existent or real physical peril and whether that physical peril, if it does exist, was caused by the negligence of Rhodes. In Dobran v.Franciscan Med. Ctr., 102 Ohio St.3d 54, 2004-Ohio-1883, the Ohio Supreme Court recently concluded that a claim is not colorable under Ohio law where a plaintiff cannot prove she contracted or will contract a disease as a result of a defendant's negligent actions. Because Masny cannot prove Dr. Rhodes actions caused her to contract a disease or to potentially contract a disease in the future, the decision of the trial court is affirmed.
 Facts {¶ 3} Sometime in 2000, Masny discovered a lump in her breast. Upon the recommendation of her personal physician, Masny sought the treatment of Dr. Rhodes who specializes in the identification of such lesions. Dr. Rhodes recommended excision and biopsy of the mass. The mass was removed but was somehow lost.
 {¶ 4} Masny returned to Dr. Rhodes on March 15, 2001 for an office visit. She had a mammogram performed on June 23, 2001 and the mammogram revealed a cyst. However, Dr. Rhodes did not believe it to be malignant. Masny then went to her gynecologist, Dr. Garritano, who referred her to Dr. Lipari. Dr. Lipari performed an ultrasound of Masny's breast but could not locate a mass. Masny then underwent a second mammogram in December of 2001 which revealed no abnormalities. Significantly, Masny was never diagnosed with cancer.
 {¶ 5} Masny filed suit against St. Elizabeth Medical Center and Dr. Rhodes claiming their negligent loss of the biopsy tissue caused her to lose the opportunity to determine whether she had cancer. Thus, Masny claimed Appellees negligently inflicted emotional distress upon her. Appellees moved for summary judgment arguing that Masny could not recover because no recovery could be had for that tort when it is based upon fear of a nonexistent physical peril. The trial court agreed and granted summary judgment to Appellees, which Masny now appeals.
 {¶ 6} Masny's sole assignment of error alleges:
 {¶ 7} "The trial court committed prejudicial error in granting summary judgment to Appellees Ronald A. Rhodes, M.D., and St. Elizabeth Medical Center."
 {¶ 8} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-0336. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. WillisDay Warehousing Co. (1976), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 9} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
 {¶ 10} The "portions of the record" or evidentiary materials listed in Civ.R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317.
 {¶ 11} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher at 293.
 {¶ 12} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc.v. Gordon Assoc., Inc. (1995), 104 Ohio App.3d 598, 603, citing Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,247-248.
 {¶ 13} In the present case, the parties dispute whether the loss of ability to diagnose a tumor constitutes a real physical peril. The resolution of this issue is significant in that a plaintiff can only recover for negligent infliction of emotional distress if they were in fear of some real physical peril. A remarkably similar issue was just recently addressed by the Ohio Supreme Court in Dobran.
 {¶ 14} In that case, a mole was taken from the appellant's arm, biopsied and found to be a malignant melanoma. The appellant decided to have a sentinel lymph node biopsy performed by the appellees to determine whether his melanoma had metastasized since those nodes are the first lymph nodes in the body to be encountered by metastasized melanoma. The samples of his lymph nodes that were tested using traditional histology tested negative for metastasis. The others were frozen and shipped elsewhere for PCR screening. The shipped samples, however, had thawed before their arrival, rendering them unusable for PCR screening or other testing.
 {¶ 15} The appellant brought suit claiming that the PCR screening results would have defined the probability of metastasis and his life expectancy, and that his quality of life was negatively affected by the extreme emotional distress caused by the uncertainty surrounding a recurrence of cancer. In addressing this claim, the Supreme Court reviewed the evolution of the law governing claims of negligent infliction of emotional distress where a plaintiff does not suffer physical injury but is placed in actual physical peril.
 {¶ 16} The Supreme Court first noted its decision in Schultzv. Barberton Glass Co. (1983), 4 Ohio St.3d 131, that "[a] cause of action may be stated for the negligent infliction of serious emotional distress without a contemporaneous physical injury".Dobran at ¶ 10, citing Schultz at syllabus. In Schultz, a sheet of glass fell off a truck and smashed into Schultz's windshield. Schultz was not physically injured, but nevertheless suffered serious emotional distress as a result of the accident.
 {¶ 17} The Supreme Court next referenced its decision inPaugh v. Hanks (1983), 6 Ohio St.3d 72, that an actionable claim for negligent infliction of emotional distress was stated when a mother alleged severe psychological harm due to three separate incidents in which a car crashed into her house or yard, causing her to fear for the lives of her children.
 {¶ 18} Finally, the Supreme Court cited its most recent decision regarding this particular issue, Heiner v. Moretuzzo
(1995), 73 Ohio St.3d 80. In that case, the appellant was incorrectly and repeatedly informed by health professionals that she had tested positive for HIV. After later discovering that she was HIV negative, the appellant brought suit alleging that the false diagnosis was a result of the appellees' negligence, and sought recovery for negligent infliction of emotional distress. The appellant in Heiner was prohibited by the Supreme Court from recovering on those facts.
 {¶ 19} In Dobran, the Supreme Court explained that it had distinguished the facts in Heiner from those in Paugh andSchultz because the plaintiff in Heiner "neither witnessed nor was exposed to any real or impending physical calamity."Dobran at ¶ 12, citing Heiner at 85. "[T]he claimed negligent diagnosis never placed appellant or any other person in real physical peril, since appellant was, in fact, HIV negative." Id. The Supreme Court concluded in Heiner that "Ohio does not recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril." Dobran at ¶ 12, citing Heiner
at syllabus.
 {¶ 20} After discussing the holdings from its prior decisions in Schultz, Paugh, and Heiner, the Supreme Court went on to discuss two cases cited by the appellant in support of his argument that he was actually in fear of some existent physical peril.
 {¶ 21} First, the appellant in Dobran cited the Eighth District's decision in Padney v. MetroHealth Med. Ctr. (2001),145 Ohio App.3d 759. In that case, the appellant contracted tuberculosis, allegedly through his employment. The appellant died from the disease and his wife and daughter later tested positive for tuberculosis, presumably from their contact with him. The Eighth District determined, despite the fact the wife and daughter only had a latent form of tuberculosis, that sufficient evidence existed from which a reasonable jury could conclude that the employer had negligently inflicted emotional distress on plaintiffs by causing them to fear the development of active tuberculosis.
 {¶ 22} Next, the appellant in Dobran referenced the holding of the United States Supreme Court in Norfolk W. Ry. Co. v.Ayers (2003), 538 U.S. 135. In that case, the Court held that an asbestosis claimant, upon demonstrating a reasonable fear of cancer stemming from his present disease, could recover for that fear as part of his asbestosis-related damages for pain and suffering. However, before a plaintiff could recover, the Court explained that a "zone of danger" test was to be applied which required that the plaintiff either sustain a physical impact as a result of a defendant's negligent conduct or be placed in immediate risk of physical harm by that conduct.
 {¶ 23} The Supreme Court in Dobran, found the appellant's reliance upon both of these cases to be misplaced, explaining:
 {¶ 24} "The fundamental difference is that the plaintiffs' illnesses in Padney and Norfolk were caused by the negligence of the defendants. The Norfolk zone-of-danger test specifically requires that a plaintiff either sustained a physical impact as a result of a defendant's negligent conduct or was in the `zone of danger,' i.e., was placed in immediate risk of physical harm. Mr. Dobran did not contract cancer as a result of DCOP's allegedly negligent actions. In the event that his cancer ever returns, it will not be because DCOP placed him in any immediate risk of physical harm.
 {¶ 25} "As we stated in Heiner, `the facts of this case remind us that not every wrong is deserving of a legal remedy. * * * While we remain vigilant in our efforts to ensure an individual's "right to emotional tranquility," we decline to expand the law to permit recovery on the facts of this case.' (Citation omitted.) Heiner, 73 Ohio St.3d at 88,652 N.E.2d 664, quoting Paugh, 6 Ohio St.3d at 74, 6 OBR 114,451 N.E.2d 759." Dobran at ¶¶ 18, 19.
 {¶ 26} Although it is tempting to say that Masny's case is distinguishable from Dobran's, since Masny never received a diagnosis, it is a distinction without a difference. The detail in this case upon which our decision turns is the fact that although Masny contends Rhodes caused her emotional distress, the Ohio Supreme Court has held that this is not compensable.
 {¶ 27} Because this case is not akin to asbestos or tobacco litigation, we were not called upon to decide what may have caused the lump in Masny's breast. Instead, we were asked to decide whether Rhodes failure to test the biopsied cells placed Masny in some real physical peril. In the present case, Masny has failed to prove that Dr. Rhodes would be in any way responsible for her potential contraction of cancer. Based upon the recent decision of the Ohio Supreme Court, we conclude that Masny simply cannot recovery under this particular theory.
 {¶ 28} We understand that Masny was searching for some peace of mind. The quality of her life has been affected by the uncertainty surrounding the possible future diagnosis of cancer. However, in light of the Supreme Court's decision in Dobran,
the lost opportunity to diagnose a condition is simply not the type of wrong from which a person can seek recovery in the State of Ohio.
 {¶ 29} Accordingly, Masny's sole assignment of error is meritless and the judgment of the trial court is affirmed.
Waite, P.J., concurs.
Vukovich, J., concurs.