LOUDIN, APPELLEE, *v.* RADIOLOGY & IMAGING SERVICES, INC., ET AL.,
APPELLANTS.

[Cite as *Loudin v. Radiology & Imaging Servs., Inc.,*
128 Ohio St.3d 555, 2011-Ohio-1817.]

*Damages for emotional distress stemming directly from a physical injury are to be considered in a traditional medical-malpractice claim — Emotional distress stemming directly from a physical injury is not a basis for an independent cause of action for the negligent infliction of emotional distress.*

(No. 2010-0297 — Submitted January 18, 2011 — Decided April 20, 2011.)

APPEAL from the Court of Appeals for Summit County, No. 24783,
185 Ohio App.3d 438, 2009-Ohio-6947.

_____

SYLLABUS OF THE COURT

1.  Damages for emotional distress stemming directly from a physical injury are to be considered in a traditional medical-malpractice claim.

2.  Emotional distress stemming directly from a physical injury is not a basis for an independent cause of action for the negligent infliction of emotional distress.

_____

MCGEE BROWN, J.

{¶ 1}   This is an appeal from a judgment entered by the Ninth District Court of Appeals finding that Lonna Loudin presented genuine issues of material fact that would allow her medical-malpractice claims to survive summary judgment.  We affirm the judgment of the court of appeals and hold that damages for emotional distress stemming directly from a physical injury are to be

considered in a traditional medical-malpractice claim and that emotional distress stemming directly from a physical injury is not the basis for an independent cause of action for the negligent infliction of emotional distress.

**Facts and Procedural History**

{¶ 2}   From 1997 through 2004, the appellee, Loudin, went to Reflections Breast Health Center ("Reflections"), owned and operated by Radiology & Imaging Services, Inc. ("Radiology"), to receive yearly mammograms.  All of Loudin's mammograms during that time were interpreted as normal.  This included the mammogram conducted in 2003, which was reviewed by Dr. Richard Patterson in April of that year.

{¶ 3}   Loudin was persistent in monitoring herself for cancer because her husband had died of lung cancer in 1981 and she wanted to ensure early detection and treatment if she had cancer so that the same fate would not befall her.  In the spring of 2004, Loudin detected a lump in her left breast during self-examination and was referred to Reflections for a diagnostic mammogram.  The films from Loudin's May 2004 mammogram revealed a mass that was highly suggestive of malignancy.  According to expert witness testimony, the mass had grown from one centimeter to approximately two centimeters between 2003 and 2004.  Dr. David B. Dellinger conducted a biopsy of the mass, and the pathology report indicated that the mass was cancerous.  With no additional factors present, a two-centimeter cancerous mass constitutes Stage I cancer.  Upon review of the pathology report of the biopsy, Dr. Joseph Koenig, Loudin's oncologist, informed Loudin that her treatment plan would probably entail lymph-node dissection, a lumpectomy, radiation therapy, and hormone therapy, but would most likely not include chemotherapy if her lymph nodes tested negative for cancer.  Dellinger and Koenig recommended the dissection of nearby lymph nodes in order to determine whether Loudin's cancer had spread to other areas.  Two of the eight lymph nodes dissected tested positive for cancer.  This additional factor advanced

Loudin's diagnosis to Stage IIA cancer. Loudin underwent a lumpectomy, eight rounds of chemotherapy, and six weeks of radiation therapy and began hormone therapy. At the time of her October 2005 deposition, Loudin's cancer had not recurred.

{¶ 4} Loudin initiated this action by filing a complaint asserting medical-negligence claims against the defendants-appellants, Radiology & Imaging Services, Inc., Radiology & Imaging Services, Inc., d.b.a. Reflections Breast Health Center, and Dr. Richard D. Patterson.[1] In her first claim for relief, Loudin alleged that Radiology, as the employer and principal to its employee physicians, including Patterson, had "caused and/or contributed to her injury." In her second claim for relief, Loudin alleged that Patterson had breached the required standards of care when conducting Loudin's regular screenings for breast cancer. In her third claim for relief, Loudin alleged that Radiology had negligently failed to supervise Patterson. Loudin alleged injuries in the form of a delayed diagnosis of cancer, the progression of untreated carcinoma to Stage IIA breast cancer, the "loss of chance for a better outcome," emotional distress, acute physical, mental, and emotional pain and suffering, and a loss of the ability to enjoy a normal life.

{¶ 5} In her claims for medical negligence, respondeat superior, and negligent supervision, Loudin alleged that the appellants had breached the required standard of care by failing to detect and commence treatment for her cancer upon examination of her 2003 mammography films, which revealed a visible one-centimeter mass. Upon being granted leave, Loudin amended her complaint on March 5, 2009, to further allege that the appellants' negligence had led to the enlargement of her tumor, metastasis to her lymph nodes, and emotional distress from the fear of an increased chance of recurrence of cancer.

---

1. Loudin first filed a complaint on April 14, 2005, but voluntarily dismissed the matter without prejudice on March 16, 2007. On March 14, 2008, she refiled her complaint as permitted by R.C. 2305.19, which allowed her complaint to stay within the one-year statute of limitations applicable to medical claims under R.C. 2305.113(A).

**{¶ 6}** Loudin submitted the deposition testimony of radiologist Dr. Jules H. Sumkin, who stated that the failure to detect her cancer in 2003 was a deviation from the applicable standard of care and that Loudin's tumor had increased from one centimeter to two centimeters from 2003 to 2004. Loudin also submitted the deposition testimony of an additional expert witness, Dr. Ronald Citron, who stated that to a reasonable degree of medical certainty, the cancer would not have been present in Loudin's lymph nodes had she been correctly diagnosed in 2003. With lymph nodes negative for cancer and a one-centimeter cancerous tumor, Loudin still would have undergone a lumpectomy, radiation therapy, and hormone therapy. However, with lymph nodes testing positive for cancer, she also had to undergo chemotherapy. Citron testified that Loudin's ten-year-survival prognosis would have been 85 percent had detection and treatment occurred in 2003 and that her prognosis from detection and treatment in 2004 was 82 percent.

**{¶ 7}** Ultimately, the appellants filed a motion to dismiss Loudin's amended complaint for failure to state a claim for which relief could be granted. The appellants characterized Loudin's complaint as seeking recovery solely for the negligent infliction of emotional distress. In their response to Loudin's memorandum opposing their motion, the appellants also argued that Loudin had not established her medical-negligence claim.

**{¶ 8}** Because both parties' arguments relied on facts outside the pleadings, the trial court converted the appellants' motion to dismiss into a motion for summary judgment. In its decision, the trial court noted that Loudin had included damages for emotional distress in her medical-malpractice claim, but had not pleaded a separate cause of action for the negligent infliction of emotional distress. The trial court nonetheless chose to separately address Loudin's request for damages for emotional distress using the analysis applied to claims for negligent infliction of emotional distress. The trial court concluded that Loudin

4

was precluded from making a claim for the negligent infliction of emotional distress because such a claim would require the finder of fact to determine what portion of Loudin's emotional distress was attributable to her initial diagnosis of cancer and what portion was attributable to "her understanding that the untreated cancer had metastasized, thereby changing her diagnosis for the worse." And this type of determination, the court held, was "precisely the type of issue that courts have attempted to guard against in their analyses of these types of claims." The trial court also concluded that Loudin's medical-negligence claim must fail because "growth and metastasis of cancer are not compensable physical injuries in Ohio." The trial court granted summary judgment in favor of the appellants and against all claims for relief in Loudin's complaint.

{¶ 9} The Ninth District Court of Appeals reversed, holding that the growth and metastasis of cancer are compensable physical injuries and that Loudin's medical-negligence claim should have survived summary judgment. The appellate court pointed out that Loudin had not pleaded a separate cause of action for the negligent infliction of emotional distress. However, because neither party claimed that the trial court should not have addressed the issue of negligent infliction of emotional distress, the appellate court went on to analyze that issue on appeal. After a discussion of the history of claims for the negligent infliction of emotional distress, the appellate court focused on this court's explanation in *Binns v. Fredendall* (1987), 32 Ohio St.3d 244, 513 N.E.2d 278, that a negligence claim involving a physical injury invokes the traditional rules of recovery, which consider emotional distress as a part of damages. The Ninth District held that Loudin's fear of recurrence of cancer was a type of emotional injury for which Loudin could seek recovery.

{¶ 10} The Ninth District concluded that the trial court's analysis of negligent infliction of emotional distress was not correct and ruled that Loudin's claims for medical malpractice, and her related claims for respondeat superior and

negligent supervision, should have survived summary judgment. The Ninth District affirmed the trial court's decision regarding certain evidentiary issues, reversed the remainder of the decision, and remanded the cause to the trial court for further proceedings.

{¶ 11} The cause is before this court upon the acceptance of a discretionary appeal.

## Analysis

### *Medical Negligence: Physical Injury*

{¶ 12} The issue before this court is whether the evidence submitted by Loudin in support of her claims for medical negligence and resulting damages was sufficient to defeat the appellants' motion for summary judgment.

{¶ 13} As with negligence claims in general, liability based on the alleged negligence of a medical professional requires proof of (1) a duty running from the defendant to the plaintiff, (2) the defendant's breach of that duty, (3) damages sustained by the plaintiff, and (4) proximate causation of the damages by the defendant's breach of duty. *Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assoc., Inc.*, 108 Ohio St.3d 494, 2006-Ohio-942, 844 N.E.2d 1160, at ¶ 17, citing *Hester v. Dwivedi* (2000), 89 Ohio St.3d 575, 578, 733 N.E.2d 1161.

{¶ 14} A physician who undertakes a physician-patient relationship has the duty to exercise reasonable care in diagnosing the patient's illness and prescribing appropriate treatment. *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 583, 613 N.E.2d 1014; *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 150, 569 N.E.2d 875. A medical professional's failure to detect a condition may result in liability if the failure to detect is proven to be a proximate cause of a patient's injury. *Berdyck* at 584. "Diagnosis must be regarded as important as is the treatment to be administered, for faulty diagnosis may result in treatment which is not only not correctional and curative, but is positively harmful in character." *Willett v. Rowekamp* (1938), 134 Ohio St. 285, 289, 12 O.O. 91, 16

N.E.2d 457. Although a medical professional is not a warrantor of a positive result or cure, a negligent act or omission that "prolongs [a patient's] illness, increases his suffering, or, in short, makes his condition worse than it would have been if due skill and care had been used, would, in a legal sense, constitute injury." *Craig v. Chambers* (1867), 17 Ohio St. 253, 261, abrogated in part on other grounds as recognized in *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 250, 56 O.O.2d 146, 272 N.E.2d 97.

**{¶ 15}** The appellants concede that Loudin adequately established duty and breach for purposes of summary judgment by presenting expert testimony that the appellants' failure to detect her cancer in 2003 was a deviation from the applicable standard of care. They focus their argument on the element of damages and contend that Loudin provided no evidence that the appellants' failure to timely diagnose her cancer proximately caused her any physical injury. They agree with the trial court's conclusion that "growth and metastasis of cancer are not compensable physical injuries in Ohio," and they point out that Loudin was not cognizant of the growth of her tumor from 2003 to 2004 and assert that the course of treatment for her cancer would have been no less intensive had it been detected in 2003. These arguments are not well taken.

**{¶ 16}** First, the appellants' contention that a plaintiff must physically perceive the cancer's progression in order for it to be a compensable injury is unfounded. The law recognizes that injuries in medical-malpractice cases may go undetected for a long time, as evidenced by the tolling of the statute of limitations for medical-negligence claims until the plaintiff is or should be aware of the injury. R.C. 2305.113(D). There is no requirement in Ohio that a physical injury in a traditional negligence case cause pain or otherwise manifest itself so that the plaintiff is aware of its presence and deleterious effect at all times.

**{¶ 17}** Second, Loudin presented expert testimony that she would not have undergone an identical course of treatment had the cancer been detected in

2003. Loudin presented expert testimony stating that chemotherapy is not administered when the lymph nodes test negative for cancer. Loudin presented further expert testimony that her lymph nodes would have been negative for cancer in 2003. Thus, according to her experts, she would not have had to undergo eight rounds of chemotherapy but for the appellants' failure to timely diagnose her cancer.

{¶ 18} Third, the growth and metastasis of cancer are cognizable physical injuries. Loudin presented expert testimony that cancer is a progressive disease and that the longer it is able to progress, the more it is able to compromise additional areas of the body and increase the number of cancer cells in the body. Whether the cancer is left undiagnosed to advance to the point of necessitating the removal of an organ, a limb, a breast, or a larger lump, the destruction of additional healthy cells and increased number of cancer cells are physical injuries, not mere physical changes.[2]

{¶ 19} Although tumor enlargement and involvement of the lymph nodes might not require radically different treatment, a plaintiff need only show some slight injury for the question of damages to go to the jury. In *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 134, 4 OBR 376, 447 N.E.2d 109, fn. 3, while comparing negligent-infliction-of-emotional-distress claims with personal-injury claims, this court explained:

{¶ 20} "Courts have allowed recovery for emotional distress accompanied by the slightest injury. 'When there is evidence of any injury, no matter how

---

2. See *Tomcik v. Ohio Dept. of Rehab. & Corr.* (1991), 62 Ohio Misc.2d 324, 330-331, 598 N.E.2d 900 (growth of breast cancer, requiring a mastectomy instead of a lumpectomy, constitutes injury); *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 641, 647, 635 N.E.2d 331 (facts of case show that defendants had been found negligent for failing to timely diagnose and treat cancer before it had metastasized, leading to amputation and death). See also *Alexander v. Scheid* (Ind.2000), 726 N.E.2d 272, 284 (cancer growth and destruction of healthy tissue constitute injury); *Evers v. Dollinger* (N.J.1984), 95 N.J. 399, 406, 471 A.2d 405 (growth of tumor constitutes physical injury); *Cloys v. Turbin* (Tex.Civ.App.1980), 608 S.W.2d 697, 701 (any growth of a cancerous tumor constitutes physical injury).

slight, the mental anguish suffered by plaintiff becomes an important element in estimating the damages sustained.' *Clark Restaurant Co. v. Rau* (1931), 41 Ohio App. 23, 26, 179 N.E. 196 [31 O.O. 576]. In *Wolfe v. Great A & P Tea Co.* (1944), 143 Ohio St. 643, 56 N.E.2d 230 [28 O.O. 520], the plaintiff was allowed to recover for mental suffering, after eating food contaminated with worms, if any physical injury was proven. See also *Ward Baking Co. v. Trizzino* (1928), 27 Ohio App. 475, 161 N.E. 557."

{¶ 21} When we view the evidence in a light most favorable to Loudin, we conclude that she has raised a genuine issue of material fact as to whether she would have sustained physical injuries greater than those that existed in 2003 but for the appellants' negligence. Specifically, but for the failure to timely diagnose Loudin's cancer, would her tumor have grown from one to two centimeters, would her cancer have spread to her lymph nodes and advanced from Stage I to Stage IIA, and would she have had to undergo chemotherapy? The Ninth District correctly reversed the trial court's summary-judgment decision on Loudin's medical-negligence claim.

*Emotional-Distress Damages*
*and the Negligent Infliction of Emotional Distress*

{¶ 22} Most, if not all, of the appellants' argument in this appeal is predicated upon the assumption that Loudin did not present evidence indicating that she sustained physical injuries as a result of the appellants' negligence. Based on this assumption, the appellants assert that Loudin's complaint raised a cause of action solely for the negligent infliction of emotional distress and that the Ninth District impermissibly created a new subspecies of the cause of action in order to allow Loudin's complaint to survive summary judgment. Loudin presented a genuine issue of material fact as to whether she sustained physical injuries as a result of the appellants' negligence, and her complaint did not raise a

separate cause of action for the negligent infliction of emotional distress; therefore appellants' assertion is without merit.

{¶ 23} We hold that the inclusion of damages for emotional distress in a complaint alleging negligence does not automatically transform the claim into one alleging the negligent infliction of emotional distress, nor does it automatically create a cause of action separate and distinct from the negligence claim.

{¶ 24} We conclude that Loudin included a claim for damages for emotional distress within the context of her medical-negligence claim and that she did not plead a separate cause of action for the negligent infliction of emotional distress. Thus, there was no negligent-infliction-of-emotional-distress claim for either the trial court or the appellate court to accept or reject, and their discussions of such a claim were unnecessary.

**Conclusion**

{¶ 25} Viewing the evidence presented to the trial court in a light most favorable to Loudin, we hold that genuine issues of material fact exist as to whether the appellants' delayed diagnosis deviated from the required standard of care, proximately causing physical and emotional injuries. Therefore, we affirm the judgment of the court of appeals and remand the matter to the trial court for further proceedings. [3]

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., concurs separately.

_____

**O'DONNELL, J., concurring.**

---

[3] The validity of Loudin's respondeat superior and negligent-supervision claims, as well as the trial court's evidentiary ruling, is not before this court.

{¶ 26} I concur in the majority's decision that emotional distress resulting from a physical injury caused by an act of medical negligence is compensable but does not give rise to an independent cause of action on the theory of a separate tort. However, I write separately to emphasize that our holding today does not represent a departure from the current state of the law regarding the recovery of damages for emotional distress.

{¶ 27} Recovery for emotional distress has evolved over the past century. In *Miller v. Baltimore & Ohio S.W. RR. Co.* (1908), 78 Ohio St. 309, 85 N.E. 499, paragraph three of the syllabus, this court held that "[n]o liability exists for acts of negligence causing mere fright or shock, unaccompanied by contemporaneous physical injury, even though subsequent illness results, where the negligent acts complained of, are neither willful nor malicious."

{¶ 28} However, in *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, this court overruled the "impact rule" set forth in *Miller*, holding that "[a] cause of action may be stated for the negligent infliction of serious emotional distress without a contemporaneous physical injury."

{¶ 29} We reinforced our holding in *Schultz* in *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, holding that "[a] cause of action may be stated for the negligent infliction of serious emotional distress without the manifestation of a resulting physical injury. Proof of a resulting physical injury is admissible as evidence of the degree of emotional distress suffered." Id. at paragraph two of the syllabus. *Paugh* described serious emotional distress as an "emotional injury which is both severe and debilitating" and "may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Id. at paragraph 3a of the syllabus.

{¶ 30} Nonetheless, in *Binns v. Fredendall* (1987), 32 Ohio St.3d 244, 513 N.E.2d 278, we distinguished *Paugh*, holding that "[n]egligently inflicted emotional and psychiatric injury sustained by a plaintiff who also suffers contemporaneous physical injury in a motor vehicle accident need not be severe and debilitating to be compensable." Id. at paragraph one of the syllabus. Thus, *Binns* reaffirmed our prior understanding that "[r]ecovery for negligently inflicted emotional and psychiatric injuries accompanied by contemporaneous physical injury may include damages for mental anguish, emotional distress, anxiety, grief or loss of enjoyment of life caused by the death or injury of another, provided the plaintiff is directly involved and contemporaneously injured in the same motor vehicle and accident with the deceased or other injured person." Id. at paragraph three of the syllabus.

{¶ 31} Accordingly, our case law already establishes that a plaintiff who suffers a physical injury may recover for emotional distress, regardless of whether the emotional injuries are severe and debilitating. Id. at paragraphs one, two, and three of the syllabus.

{¶ 32} The majority affirms the holding by the court of appeals that a delayed diagnosis of cancer can cause an attendant physical injury for which a plaintiff may seek recovery for emotional distress as an element of damages. And as the majority opinion points out, that holding is supported by authority from other jurisdictions. Majority opinion at ¶ 18, fn. 2; see also *Boryla v. Pash* (Colo.1998), 960 P.2d 123; *Bond v. Ivanjack* (D.C.App.1999), 740 A.2d 968.

{¶ 33} Accordingly, I concur in the judgment affirming the judgment of the court of appeals on the basis that Lonna Loudin has raised a genuine issue of fact as to whether she sustained a physical injury as a result of a delayed diagnosis of breast cancer. Because this case involves emotional distress stemming from a physical injury, *Binns* controls. Thus, if Loudin proves at trial that appellants committed professional negligence that resulted in a physical injury that caused

12

her emotional distress, then pursuant to *Binns*, she may recover damages for resultant emotional distress.

{¶ 34} For these reasons, I agree that emotional distress resulting from a physical injury caused by medical negligence is compensable but does not give rise to an independent cause of action. Thus, I concur in the judgment affirming the court of appeals.

————————————

Scanlon & Elliott, Lawrence J. Scanlon, and Michael J. Elliott, for appellee.

Roetzel & Andress, L.P.A., Douglas G. Leak, and Stacy R. Delgros, for appellants.

Melissa R. Lipchak, urging affirmance on behalf of amicus curiae, Ohio Association for Justice.

————————————