[Cite as *Court Appointed Grdns. v. Children's Hosp. Med. Ctr.*, 2016-Ohio-5112.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

COURT APPOINTED GUARDIANS, :     APPEAL NO. C-150449
Individually and on Behalf of Jane Doe, a               TRIAL NO. A-1202505
Minor,                    :

     Plaintiffs-Appellants,       :           *O P I N I O N.*

   vs.                         :

CHILDREN'S HOSPITAL MEDICAL :
CENTER,

                          :

MICHAEL S. CHUA, M.D.,

      and                        :

LESLEY L. BREECH, M.D.,        :

     Defendants-Appellees.       :

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 27, 2016

*Gottesman & Associates, LLP,* and *Zachary Gottesman,* for Plaintiffs-Appellants,

*Dinsmore & Shohl, LLP, J. David Brittingham* and *Allison G. Knerr,* for Defendants-Appellees.

**MOCK, Judge.**

{¶1} On January 3, 2008, Jane Doe was taken to defendant-appellee Children's Hospital Medical Center's emergency department for treatment for vaginal bleeding. Doe's father told personnel that she had fallen on a Lego toy, which had become lodged in her vagina. Doe was four years old at the time.

{¶2} Doe was originally seen by defendant-appellee Dr. Michael S. Chua, who was the attending physician in the emergency department. After an initial examination, Chua called defendant-appellee Dr. Lesley L. Breech, a pediatric gynecologist who was on call that day. Breech performed an examination under anesthesia and surgically repaired Doe's injuries. Doe was released the same day.

{¶3} Three months later, Doe's mother called her father and asked him to come and take Doe and Doe's brother from the home. She suspected that Doe's father was sexually abusing her. Doe's maternal grandparents took the children from the home and, the next day, took them to the offices of the Hamilton County Department of Job and Family Services. Doe was interviewed by a social worker and, as a result of that interview, Doe reported that she had been systematically abused by her father. She was then interviewed by a social worker from the Mayerson Center at Children's Hospital. As a result of those interviews, and the investigation that followed, Doe's father was convicted of multiple counts of rape and sentenced to life in prison without the possibility of parole.

{¶4} On April 2, 2012, plaintiff-appellants, Doe's court-appointed guardians, filed a lawsuit against Children's Hospital and Drs. Chua and Breech for negligence for failing to obtain a consultation with an abuse specialist when Doe was treated in the emergency department on January 3, 2008. The guardians also set forth a statutory cause of action for liability based on a violation of R.C. 2151.421, and

made a claim for punitive damages. The trial court granted the motion for summary judgment filed by the hospital and the doctors.

{¶5} In one assignment of error, Doe's guardians claim that the grant of summary judgment was in error. But on appeal, they have limited their argument to their assertion that the doctors had been negligent in their treatment of Doe. They have not argued that the trial court erred when it dismissed their claim premised on the claimed violation of R.C. 2151.421. We therefore limit our analysis to that common-law claim, and make no finding as to whether the statute would have afforded relief in this case.

{¶6} Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); see Mincy v. Farthing, 1st Dist. Hamilton No. C-081032, 2009-Ohio-5245, ¶ 10. For summary judgment to be appropriate, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, even after reviewing the evidence in a light most favorable to the nonmoving party. Id. The grant of summary judgment is reviewed de novo. Mincy at ¶ 11.

{¶7} In general, a common-law cause of action for negligence requires proof of (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages. See Menifee v. Ohio Welding Prod., Inc., 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). The elements are the same for medical negligence. Cromer v. Children's Hosp. Med. Ctr. of Akron, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 23, citing Loudin v. Radiology & Imaging Servs., 128 Ohio St.3d 555, 2011-Ohio-1817, 948 N.E.2d 944, ¶ 13.

{¶8}     The question before this court is whether, in this context, failing to obtain a consultation with an abuse specialist is actionable in Ohio as common-law medical negligence.  We conclude that it is not.  Medical-negligence claims in Ohio arise within the context of a medical diagnosis, treatment, or procedure which the plaintiff previously received.  *See Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1992).  Recognizing abuse by a third party and seeking a consultation does not fall within the scope of medical-malpractice claims.

{¶9}     The only other appellate district in Ohio to have addressed this issue has reached this conclusion as well.  *David M. v. Erie Cty. Dept. of Human Servs.,* 6th Dist. Erie No. E-93-40, 1994 Ohio App. LEXIS 2785 (June 30, 1994).  In that case, a child was treated at a hospital's emergency room for a fracture by two doctors. The physicians suspected that the injury had been caused by child abuse, and one of the doctors directed the hospital's social services department to contact the county social services department to report a suspicion of child abuse.  An investigation was completed with a finding that no evidence of abuse existed.  The patient was discharged from the hospital and returned to his parents.  Subsequently, the child was injured as a result of abuse.  The patient sued the hospital and the reporting doctor. The trial court dismissed the patient's suit against both parties.

{¶10}   On appeal the Sixth Appellate District concluded that no cause of action existed.  The court noted that

[a]ppellant appears to be arguing that a hospital and a physician owe a common law duty to their child patient to diagnose the cause of injuries sustained by the patient; to inform the proper agencies when the hospital or physician suspects that the patient was abused in such a manner sufficient to protect the child from further abuse; and that the

4

hospital should promulgate and enforce rules and regulations for employees to follow regarding the diagnosis and prevention of child abuse. Appellant also argues that the standard of care owed by the hospital and physician to its child patient is higher than to an adult patient because of the child's inability to protect himself or herself.

\* \* \*

We have found no case which has ever held that a hospital or a physician owes a child patient the duty to diagnose the cause of the child's injury. Furthermore, we have found no case which has ever held that a hospital or a physician owes a child patient the duty to protect that child from further child abuse. Even if we consider an abused child's medical condition to be that of being an abused child, this condition does not precipitate further abuse. Further abuse is caused solely by the independent actions of a third party. This court will not impose a common law duty upon any hospital or physician to prevent abused children from further child abuse. Doctors are not public servants. They have only the duty to provide reasonable medical care once they undertake such a duty. This duty ends once the medical care for which treatment was sought is completed, the doctor is discharged, or the doctor properly withdraws from the case. Diagnosing and preventing child abuse does not constitute medical care.

*Id.* at \*5-6, citing McCafferty & Meyer, *Medical Malpractice: Basis of Liability*, Sections 2.02, 2.04, 2.09, and 2.16, 15-26 (1985).

5

{¶11} We agree with the analysis of the Sixth Appellate District that diagnosing and preventing child abuse does not constitute medical care. There is no common-law duty to report or prevent child abuse. *See*, *e.g.*, *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 43 (no common-law duty to report child abuse); *Fed. Steel & Wire Corp. v. Runlin Const. Co.*, 45 Ohio St.3d 171, 174, 543 N.E.2d 769 (1989) (no common-law duty to foresee the criminal acts of others).

{¶12} While Doe's ordeal was horrific, the fact remains that the doctors' failure to obtain a consultation with an abuse specialist did not constitute medical negligence, as seeking a consultation of that nature does not constitute medical care. Doe's guardians have not claimed that the treatment she received in the emergency department fell below the applicable standard of care. They have alleged nothing about Dr. Chua's initial examination, and nothing about Dr. Breech's examination under anesthesia and her treatment of the wound that was improper in any way. As the Sixth Appellate District noted, their duty ended once the medical care for which treatment was sought was completed. Accordingly, we overrule the sole assignment of error presented by Doe's guardians, and we affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J.**, and **DEWINE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.