[Cite as *Lukie v. Doctor's Hosp.*, 2019-Ohio-28.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rhonda Lukie, et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 17AP-634 |
| v. | : | (C.P.C. No. 15CV-10672) |
| Doctor's Hospital, et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on January 8, 2019

**On brief:** *Elk & Elk Co., Ltd.* and *R. Craig McLaughlin,* for appellants. **Argued:** *R. Craig McLaughlin.*

**On brief:** *Baker & Hostetler, LLP* and *Robert J. Tucker,* for appellees. **Argued:** *Robert J. Tucker.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Rhonda and Steven Lukie are appealing from the granting of summary judgment against their claims based on professional negligence. They assign a single error for our consideration:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES.

{¶ 2} Rhonda Lukie had surgery performed at Doctor's Hospital. After the surgery was performed, Rhonda and her husband, Steven Lukie, learned that personnel at the hospital had not sterilized the equipment used to perform the surgery. This was a major concern for both of the Lukies and for professional staff at the hospital. The risk of Rhonda getting a serious and possibly incurable infection was very real.

{¶ 3}   As a result, the hospital engaged in an extended protocol to determine if Rhonda had contracted a bacterial infection, HIV, and/or hepatitis. Blood draws were performed over a period of six months to see if Rhonda was infected. The draws did not demonstrate the existence of the feared infection. Before the blood draws proved negative, Rhonda and her husband were frequently in a state of emotional distress.

{¶ 4}   The Lukies filed suit. Doctor's Hospital defended and alleged that, because Rhonda did not acquire any of the feared infections, she and her husband could not recover on the lawsuit. The common pleas judge assigned to the case agreed and granted summary judgment for the benefit of the hospital and related parties.

{¶ 5}   Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).

{¶ 6}   Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 7}   When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.* If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E)

to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 8} We disagree with the trial court's granting of summary judgment and therefore reverse.

{¶ 9} The complaint filed on behalf of the Lukies alleged three claims: medical negligence, negligent infliction of emotional distress, and the loss of services and consortium.

{¶ 10} As to the medical negligence claim, there is no serious question that operating on a patient with implements which have not been sterilized is below the standard of medical care. The three diseases mentioned earlier are only a few of the diseases present in Central Ohio hospitals and some are incurable with the present state of medical knowledge. Others include MRSA and serious bacterial infections. Then the issue before the trial court could only be how seriously Rhonda was harmed as a result of the negligence of personnel at Doctor's Hospital.

{¶ 11} The protocol which Rhonda had to endure involved several blood draws and testing over a substantial period of time. Such physical assaults in the legal sense are not de minimus, especially when the harmed patient is laboring under the fear that she may have been infected with an incurable or even fatal disease as a result of the negligence of hospital personnel. The legal requirement for injury in a tort case is not demanding: "a plaintiff need only show some slight injury for the question of damages to go to the jury." *Loudin v. Radiology & Imaging Servs.*, 128 Ohio St.3d 555, 2011-Ohio-1817, ¶ 19. It is inconsistent with the standard of review on summary judgment, where evidence must be construed in favor of the nonmoving party, to dismiss Rhonda's evidence of injury as being insufficient as a matter of law, in light of the nondemanding standard for demonstrating injury. The trial court cited to no case law when making this ruling. This case involves clear negligence and summary judgment as to the negligence claim was inappropriate.

{¶ 12} Summary judgment as to the negligent infliction of emotional distress claim was also inappropriate.

{¶ 13} The trial court dismissed this claim, applying the following holding from *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 87 (1995): "Ohio does not recognize a claim for

negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril."

{¶ 14} The issue in *Heiner* was a false positive on an HIV test that caused the plaintiff's emotional distress. This case is distinguishable from *Heiner*, in which there was no possibility of the actual physical injury ever developing. This is not a "misdiagnosis" case like *Heiner*, which stands for the proposition that a plaintiff may not recover for emotional distress where there was never any actual possibility of injury. Here, there was an actual physical peril—a real danger that a number of infectious diseases would manifest because of the failure to sterilize the surgical equipment. The failure of any those diseases to manifest in the end does not mean that Rhonda did not face an "actual physical peril" during the time of her distress.

{¶ 15} In *Strasel v. Seven Hills Ob-Gyn Assocs.*, 170 Ohio App. 3d 98, 2007-Ohio-171 (1st Dist.), the First District Court of Appeals distinguished *Heiner* for the same reason. The court held that *Heiner* did not prevent a mother from recovering on a claim of negligent infliction of emotional distress where a doctor had negligently performed a procedure that could have, but did not, lead to physical injury of her baby:

> It is uncontroverted that her baby was subjected to a real physical peril by the D & C, regardless of whether the peril led to an actual injury. Strasel's emotional distress resulted from the very real risk of injury to a seven-week-old fetus subjected to what was the equivalent of an abortion procedure. The fact that the baby was born without any apparent physical injury did not alter the fact that the D & C had subjected the baby to a very real danger.

*Id.*

{¶ 16} In short, there was a serious risk that Rhonda had acquired a disease which could affect the rest of her life or even end it. Hospitals do not want to publicize the risks that patients face from the number of diseases which have become more and more resistant to treatment through the administration of antibiotics. When a hospital has to admit it may have infected a patient with a serious disease, the hospital is on notice that the patient will suffer serious emotional distress.

{¶ 17} Again, summary judgment was not appropriate as to this claim.

{¶ 18} Finally, the spouse of such an injured patient also suffers harm. The law of Ohio permits recovery for the loss of services and consortium under such circumstances.

*Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 91 (1992) (stating that "it is well established that a [spouse] has a cause of action for damages for loss of consortium against a person who, either intentionally or negligently" causes injury and, as a consequence, deprives the spouse "of the love, care and companionship" of the injured spouse).

{¶ 19} In review, summary judgment was inappropriate as to all of the three claims set forth in the complaint. We sustain the single assignment of error, reverse the granting of summary judgment, and remand the case to the Franklin County Court of Common Pleas for further appropriate proceedings.

*Judgment reversed;*
*case remanded.*

**TYACK and BRUNNER, JJ., concur.**